# Volunteer Firemen's Relief Association v. City of Reading

*George B. Balmer*, for plaintiff.

*Daniel H. Huyett, 3rd*, for defendant.

MAYS, P. J., August 4, 1955.—In this action of assumpsit, plaintiff claims the entire amount of a check in the amount of $32,051.51 which was received by City Treasurer J. L. Hoch and by him deposited in the name of defendant, the City of Reading.

A stipulation for trial by a judge, without jury, was duly filed. After the testimony taken at the trial was transcribed, there was an argument. The trial judge, instead of making findings of fact and conclusions of law, filed an opinion in which he pointed out that there may be other parties who should be brought upon the record and suggested the continuance of the cause so that these matters might be argued and determined.

Defendant's brief presented at the subsequent argument, points out that there is no necessity for bringing upon the record others who may be interested in this fund. The city solicitor contends that the issue is one clearly between plaintiff and the City of Reading.

The respective parties have questioned the propriety of an action of assumpsit, mention having been made

that mandamus would have been the proper proceeding. The brief of plaintiff states that "This is an action in assumpsit and was brought in that form at the specific request of the City solicitor, the City solicitor requesting that a mandamus proceeding be not brought. It is submitted that assumpsit is the proper remedy because the money sued for is in the bank account in the name of the City of Reading." From the reading of both supplemental briefs, it becomes manifest that neither of the parties have a desire to question the propriety of the present proceeding. Neither do they wish to have any other parties brought upon the record. They state that the trial judge should decide the case upon the record already made. This being so, I will now determine whether there is a right on plaintiff to recover all the money or only part thereof, received from the State treasurer and deposited in the account of the City of Reading.

### Findings of Fact

(1) Plaintiff, The Volunteer Firemen's Relief Association of the City of Reading, is a corporation having its sole place of business in the City of Reading, Berks County.

(2) Defendant, City of Reading, is a municipal corporation organized under the laws of the Commonwealth of Pennsylvania and located in the County of Berks.

(3) On April 24, 1953, John L. Hoch, Treasurer of the City of Reading, received a check from Weldon B. Heyburn, Auditor General of the Commonwealth of Pennsylvania in the amount of $32,051.51 representing the allocation of the net amount received from the two per centum tax upon premiums by foreign fire insurance companies, to the City of Reading, in accordance with the Act of June 28, 1895, P. L. 408, as last amended by the Act of May 26, 1949, P. L. 1825,

72 PS §2262, which check was deposited by Mr. Hoch in the name of defendant.

(4) Plaintiff is the Relief Fund Association of the Volunteer Firemen of the City of Reading, having a membership in its sick and accident fund of 5,449.

(5) There are approximately 75 paid firemen who are a part of the Reading Fire Department, and who are contributing members of defendants' general pension fund.

(6) Defendant has never established a pension fund exclusively for the benefit of paid firemen of the City of Reading.

The moneys received are not to be held by the City of Reading. Section 2 of the Act of June 28, 1895, P. L. 408, as last amended, 72 PS §2262, reads, inter alia, as follows:

"Each city . . . receiving any payment from the State Treasurer hereunder, shall forthwith pay. . . ."

The sole legal question is whether the City General Pension Fund is entitled to any part of the $32,051.51. The decision in this case turns upon the interpretation of said section 2 of the Act of 1895, supra, which reads as follows:

"On and after the first day of January, one thousand nine hundred and nineteen, and annually thereafter, there shall be paid by the State Treasurer to the treasurers of the several cities . . . within the Commonwealth, the entire net amount received from the two per centum tax paid upon premiums by foreign fire insurance companies . . . Each city . . . receiving any payment from the State Treasurer hereunder, shall forthwith pay the amount received to the relief fund association of, or the pension fund covering the employes of the fire department, or of such fire company, or fire companies, paid or volunteer, now existing, or hereafter organized, in such city . . . as is or are engaged in the service of such city . . . and duly recog-

nized as such by the council . . . of such city . . . *Provided, That if the fire department consists of paid and volunteer firemen and the paid firemen shall be covered by a pension fund, then the two per centum tax aforesaid shall be divided equally between the relief fund association of the volunteer firemen and the pension fund for the paid firemen . . .*". (Italics supplied.)

The proviso sets up two requirements for the division of the fund, i.e.:

(1) The fire department must consist of paid and volunteer firemen; and (2) The paid firemen must be covered by a pension fund.

There may be some doubt as to whether the City of Reading comes within the designation of a city having a fire department consisting of paid and volunteer firemen. The only persons having any connection with the fire department who are paid by the city are the chief and two assistant chiefs. The other persons who are claimed by the city to be paid firemen are paid by the various companies composing the fire department from the funds of those companies. The Supreme Court of Pennsylvania has held that those paid drivers are not employes of the City of Reading for the purpose of being protected by the Civil Service Act covering paid firemen: Steffy v. Reading et al., 353 Pa. 539.

Whatever may be the status of these various firemen, it is sufficient to say that there does not exist in the City of Reading any pension fund within the provisions of the above proviso which undoubtedly refers to a pension fund created under the provisions of the Act of June 23, 1931, P. L. 932, Art. XLIII, last amended by the Act of June 28, 1951, P. L. 662, sec. 43, 53 PS §12198—4320. Said act reads, in part, as follows:

"Firemen's pension fund; Management; Annuity contracts. Except as hereinafter provided, cities shall

provide annuity contracts or establish, by ordinance, a firemen's pension fund, to be maintained in part by an equal and proportionate monthly charge against each member of the fire department, which shall not exceed annually three per centum of the pay of such member. In any case where there is an existing organization or association for the benefit of fully paid firemen, constituting and having in charge the distribution of firemen's pension funds, no annuity contract shall be provided, nor shall any firemen's pension funds be established under the provisions of this section unless and until the members of such organization by a two-thirds vote, elect to transfer said existing fund into the pension fund required to be established by this section . . ."

In the same Act of Assembly, 53 PS §12198-4325, is the following provision:

"In any city wherein the members of the fire department are members of a pension fund not established *solely* for the purpose of pensioning members of the fire department, there *shall* be transferred from such other pension fund into the firemen's pension fund required to be established by this act, the moneys contributed thereto by members of the fire department who have not been retired, and a just and equitable proportion of the moneys contributed by the city to such other pension fund for the future retirement of members of the fire department . . .". (Italics supplied.)

It is the responsibility of the city in accordance with the mandates of the aforesaid acts to set up a separate pension fund for paid firemen. It is not sufficient to have the city treat its general fund as being the one governed by the Act of June 28, 1895. The mayor, councilmen, city solicitor or other employes of the city, unless specifically provided for by legislative enactment, are not entitled to have their

pensions paid to them from moneys collected from foreign fire insurance companies. It must be remembered that the whole theory of the taxation of said foreign fire insurance companies and appropriation of the moneys collected by such tax is that it should be for the benefit of firemen. To hold otherwise and adopt the theory of the city, defendant, would violate completely the whole theory of the legislation of the State in applying the proceeds of the tax on premiums of foreign fire insurance companies for firemen and firemen alone. This tax should not go toward the payment of pensions to other city employes. In Firemen's Pension Fund v. Harrisburg et al., 362 Pa. 432, the Supreme Court definitely ruled that a firemen's pension fund which did not exist on the date the city received a payment from the State treasurer, is not entitled to receive one-half of such payment from the city. What the city is undertaking to do is to give one-half of such payment to a general city pension fund, which fund is not even a party to this proceeding. Section 2 of the Act of 1895, supra, amongst other things, says:

". . . the entire net amount received from the two per centum tax paid upon premiums by foreign fire insurance companies . . . Each city . . . receiving any payment from the State Treasurer hereunder, shall forthwith pay the amount received to the relief fund association . . . or the pension fund covering the employes of the fire department. . . ."

In this case, there is a relief fund association, plaintiff. There is no pension fund as contemplated by this act and this being so, plaintiff is entitled to all of the moneys.

If there is to be a firemen's pension fund, it should be created in accordance with the act and this should be done by the action of the city council and until it

is done, said pension fund is not entitled to a pro rata distribution under the act. We say, as did Rupp, J. in Firemen's Pension Fund, supra, at p. 437:

"This conclusion is in nowise affected by the fact that, upon receipt of the money, the City ignored the mandate of Section 2 of the Act of 1895, as amended, supra, to *forthwith* pay the entire amount to the Harrisburg Firemen's Relief Association of the State of Pennsylvania, which was then in existence and entitled to receive it."

Plaintiff in this case, pays benefits to members who are injured while fighting fires, pays death benefits to families of members who are killed while fighting fires and pays pensions to the widows and children of members who are killed fighting fires. When the legislature directs that money should be turned over to such an organization, it should be done as the act says, "forthwith". To maintain a fund of this kind, if properly managed, the moneys must be invested so that there will be an adequate source from which payments can be made for the various benefits that come to the members of the association and those who, through the members, receive benefits.

Plaintiff, having been denied the use of this money, is entitled to some interest, if not at the legal rate. Plaintiff is entitled to the judgment for the full amount of its claim and we now say, as did Endlich, J. 235 Pa. 367, at p. 371, Nolan v. Reading City:

"The control over its enforcement in such manner as shall be equitable and proper will still remain with the court."

### Conclusions of Law

(1) The Act of Assembly of June 28, 1895, P. L. 408, as last amended by the Act of May 26, 1949, P. L. 1825, 72 PS §2262, requires an equal division of the funds received by the City of Reading pursuant thereto

only when the City of Reading has established a pension fund exclusively for its paid firemen.

(2) The entire proceeds of the check in the amount of $32,051.51 received on April 24, 1953, by John L. Hoch, Treasurer of the City of Reading, from Weldon B. Heyburn, Auditor General of the Commonwealth of Pennsylvania, representing the allocation to the City of Reading of the net amount received from the two per centum tax upon premiums by foreign fire insurance companies in accordance with the Act of June 28, 1895, P. L. 408, as amended, supra, belong to plaintiff.

(3) A verdict is entered against defendant in favor of plaintiff in the sum of $32,051.51 with interest from April 24, 1953.

(4) Costs to be paid by defendant.